**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**TIMOTHY STEPHENS,**
**#176094**                                                                                              **PLAINTIFF**

**V.**                              **CASE NO. 4:19-cv-174-BSM-BD**

**DOES,** *et al*.                                                                                    **DEFENDANTS**

### RECOMMENDED DISPOSITION

**I.    Procedures for Filing Objections**

This Recommendation has been sent to Judge Brian S. Miller. Any party may file objections if they disagree with the finding or conclusions in the Recommendation. Objections should be specific and should include the factual or legal basis for the objection. To be considered, objections must be received in the office of the Court Clerk within 14 days.

If no objections are filed, Judge Miller can adopt this Recommendation without independently reviewing the record. By not objecting, the parties may waive the right to appeal questions of fact.

**II.   Background**

Plaintiff Timothy Stephens filed this lawsuit without the help of a lawyer under 42 U.S.C. § 1983. (Doc. No. 2) He claims that he was subjected to unconstitutional conditions of confinement at the Pulaski County Detention Facility (Detention Facility). Specifically, he alleges that there was no heat in the Detention Facility from October 1, 2018 until November 14, 2018. (Doc. No. 2, Doc. No. 5)

Defendants Rose and Wilson have moved for summary judgment on the merits of Mr. Stephens's claims on several grounds. In response to claims of individual liability, they deny that Mr. Stephens was subjected to unconstitutional conditions or that they were personally involved with decisions about heating the facility. As to official-capacity claims, they contend that there was no policy or custom at the facility that caused Mr. Stephens any injury. (Doc. No. 56)

Mr. Stephens has responded to the motion. He argues that there are disputed facts that must be decided at a trial. (Doc. No. 62)

### III. Standard

Summary judgment means that the court rules in favor of a party before trial. The Defendants are entitled to summary judgment only if the evidence, viewed in the light most favorable to Mr. Stephens, shows that there is no genuine dispute about any fact that is important to the outcome of the case. FED.R.CIV.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322B23 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 246 (1986).

### IV. Facts

Mr. Stephens alleges that temperatures were below freezing in the autumn of 2018, and that the HVAC system at the Detention Facility blew cold air into his cell and his entire housing unit from October 1 through November 14. He claims that he suffered physical pain as a result of the cold temperatures, including numbness in his fingers, toes, ears, tip of his nose, lips, and severe joint pain. (Doc. No. 2) He also claims to have "succumbed to illness" due to the cold conditions. (Doc. No. 2)

According to Mr. Stephens, he filed one grievance regarding the malfunctioning HVAC on October 8, but never received a response. (Doc. No. 2, 5, 35) Defendants dispute this assertion. It is undisputed, however, that he filed no other grievances complaining about the lack of heat. Mr. Stephens testified that his reason for not filing another grievance regarding the cold conditions was that Detention Facility officials often took a month to respond to grievances; and, he was still waiting on a response to his October 8 grievance. (Doc. No. 58-5, p. 75)

Defendant Rose was the Housing and Security Captain at the Detention Facility during the relevant time. (Doc. No. 58-6) Defendant Rose does not recall ever being notified about cold temperatures in cells or of seeing any grievance filed by Mr. Stephens. (Doc. No. 58-6)

Defendant Wilson was the HVAC mechanic in the Detention Facility maintenance department in 2018. (Doc. No. 58-6) When HVAC maintenance issues arose at the Detention Facility, staff would alert Defendant Wilson either directly, by phone, or through a work order. (Doc. No. 58-6) Defendant Wilson was on leave from September 14 until October 28 in 2018. (Doc. No. 58-6) If Mr. Stephens had filed a grievance on October 8, as he alleges, Defendant Wilson would not have received the work order because he was on vacation. (Doc. No. 58-6) Defendant Wilson was at work, however, from October 29 through November 14, when the HVAC was still malfunctioning.

Mr. Stephens acknowledges that he did not speak directly to either Defendant about the lack of heat, but he contends that they must have known that the HVAC was not working properly because it was obvious that there was no heat, and everybody knew

3

about the lack of heat in his unit. (Doc. No. 58-5, pp.70, 71, 74-75) According to Mr. Stephens, every deputy in his unit was wearing a thick winter coat, and many wore skullcaps to try to stay warm. (Doc. No. 2, p.6)

According to Mr. Stephens, the malfunctioning HVAC system continually circulated cold air during the relevant time. When he asked officials about the malfunctioning HVAC system, he was told that senior officials were aware of the situation, that they were working to correct the problem, but that cold air would continue to circulate because the blower could not be turned off. (Doc. No. 2, p.6; Doc. No. 58-5, p.71) Mr. Stephens testified in deposition that, "I was told that everybody was aware about the cold and that they were working on fixing it, but the blower was not going to be shut off." (Doc. No. 58-5, p.104)

Defendants provided the daily temperature and weather from the National Weather Service Forecast in Little Rock for the month of October 2018. (Doc. No. 58-8, p.5) The high temperatures ranged from 55 to 89 degrees, and the low temperatures ranged from 36 to 70 degrees. (Doc. No. 58-8, p.5) On the date Mr. Stephens submitted his grievance complaining about the blower, the high temperature was 88 degrees; the low temperature was 67 degrees. (Doc. No. 58-8, p.5) The average high for the month of October was 73.3 and the average low was 54.3. (Doc. No. 58-8, p.5) The outside temperature never fell below freezing during October, but the temperature did drop to the high 30s twice during the month. (Doc. No. 58.5, p.5)

The Defendants did not provide the daily temperatures for November. The Court takes judicial notice that from November 1, 2018, through November 14, 2018, the

temperatures ranged from a low of 27 degrees to a high of 70 degrees.

In his complaint, Mr. Stephens alleges he became ill due to the frigid air. He filed only one medical request during the relevant time, on October 21, 2018, complaining of weight loss due to being provided what he considered insufficient food portions. (Doc. No. 58-3, p.7) And, in his deposition, he conceded that he "didn't specifically get sick" as a result of the uncomfortably cold temperatures. (Doc. No. 58-5, pp.90, 94) He also testified that the numbness and joint pain resolved a couple of days after November 15, once the heating system was repaired. (Doc. No. 58-5, pp. 101-102, 113)

In his deposition, Mr. Stephens was asked whether he ever requested extra clothes or a blanket when there was no heat. He testified, "Well, no. Well, let me think here. I don't think I did, because I only submitted one grievance, and that was on October 8th. I remember on the grievance that I has asked for, I had asked to either be moved or I had asked for the vent to be shut off. Honestly, I cannot say that I did." (Doc. No., p.92) He explained, he did not ask because he did not think officers would provide extra blankets or clothing, and he could not afford them. (Doc. No., p.92)

According to Sergeant Warner, the custodian of records, the policy at the Detention Facility is to maintain an inside temperature of 65 to 85 degrees. (Doc. No. 58-1) If the temperature falls below 65 degrees for an extended period, extra blankets, thermal underwear, and heaters can be provided. (Doc. No. 58-1)

Also, under Detention Facility policy, if a staff member notices that a fixture or system needs repair, the staff member must immediately complete a work order log and

5

contact the shift supervisor. The shift supervisor then makes a verbal repair request. (Doc. No. 58-4, pp. 17-18)

## V. Discussion

The Eighth Amendment's prohibition against cruel and unusual punishment includes a right to safe and humane conditions of confinement.[1] *See Farmer v. Brennan*, 511 U.S. 825, 847 (1994). Providing inadequate heat can amount to an Eighth Amendment violation. *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (warmth is a basic human need; low temperatures *combined with* no blankets could violate the Eighth Amendment) (emphasis added).

That said, the "Constitution does not mandate comfortable prisons" or that prisons be "free of discomfort." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Additionally, the Supreme Court has clarified that only "extreme deprivations" that deny "the minimal civilized measure of life's necessities are sufficiently grave to form the basis" of an Eighth Amendment violation. *Hudson v. McMillian,* 503 U.S. 1, 9 (1992).

To prevail here, Mr. Stephens must show that Defendants "acted with a sufficiently culpable state of mind" in disregarding the alleged unconstitutional conditions. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). Deliberate indifference is

---

[1]Technically, Mr. Stephen's claims are analyzed under the Fourteenth Amendment's due process clause, instead of the Eighth Amendment's cruel and unusual punishment clause, because he was a pretrial detainee at all times relevant to this lawsuit. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). The distinction makes no practical difference because the standard is the same under either the Fourteenth or Eighth Amendment. *Butler v. Fletcher,* 465 F.3d 340, 345 (8th Cir. 2006).

established if a prison official "acted or failed to act despite his knowledge of a substantial risk or serious harm." *Ambrose v. Young*, 474 F.3d 1070, 1076-77 (2007) (quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)). Importantly, whether "a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.*

    A.    Claims Against Defendants Rose and Wilson

Here, Defendants do not dispute that the HVAC was not working properly; nor do they dispute that cold, outside air blew into Mr. Stephens's unit from October 1 through November 14, 2018. The problem for Mr. Stephens is that he cannot show that the Defendants, or any officials at the Detention Facility, were deliberately indifferent to his health and safety.

The Court does not question that Mr. Stephens was uncomfortably cold during the time the heating unit was not working. The fact that the cells were cold, standing alone, is not evidence that Defendants violated his rights. Mr. Stephens did not file a medical grievance alleging physical symptoms caused by cold temperatures. Likewise, he did not ask for an extra blanket or clothing.

Moreover, Mr. Stephens has not contested the Defendants' evidence that when the temperature falls below 65 degrees, prison officials can provide those items. Mr. Stephens never asked. His belief officials would have ignored his request for blankets and warmer clothing cannot justify his failure to ask.

Mr. Stephens acknowledges in his complaint that, when he complained to Detention Facility officials, they acknowledged the problem and told him that they were making repairs. This shows that officials were addressing, rather than deliberately ignoring, the problem of inadequate heat in Mr. Stephens's unit. The fact that the blower was not turned off, without more, fails to show the degree of culpability required to establish deliberate indifference.

Construing the disputed facts in a light most favorable to Mr. Stephens, there is insufficient evidence to show that either Defendant Rose or Defendant Wilson was deliberately indifferent to Mr. Stephens's health and safety from October 1 to November 14, 2018.

B.   Official Capacity Claims

Mr. Stephens's claims against the Defendants in their official capacities are, in effect, claims against Pulaski County, Arkansas. *Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir.2010). Local governments are generally not liable under § 1983 for injuries their empolyees inflict. *Monell v. New York Dep't. of Soc. Servs.*, 436 U.S. 658, 694 (1978). Here, Pulaski County is liable for the acts of the Defendants only if they violated Mr. Stephens's rights by carrying out a county policy or custom. *Id.*; *Jenkins v. County of Hennepin, Minn.*, 557 F.3d 628, 632 (8th Cir. 2009). These claims fail for two reasons. First, the Defendants did not violate Mr. Stephens's rights; and second, there is no evidence in this record of an unconstitutional Pulaski County custom or policy.

## VI. **Conclusion**

Based on the undisputed material facts, the Court recommends that Defendants' motion for summary judgment on the merits (Doc. No. 56) be GRANTED. All claims against the Defendants in both their individual and official capacities should be DISMISSED, with prejudice.

DATED this 24th day of April, 2020.

_____
UNITED STATES MAGISTRATE JUDGE